UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**JAMES PECORA,**

    Plaintiff,

v.                                                      Case No. 2:21-cv-50-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

---

# OPINION AND ORDER

Plaintiff James Pecora seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 13), [1] and the parties filed a joint memorandum (Doc. 24). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.     **Factual and procedural history**

On August 29, 2018, Pecora applied for disability insurance benefits and supplemental security income. (Tr. 132-133, 182-183, 251-263). He asserted an onset date of October 1, 2017, alleging disability due to the following: back pain; abdominal surgeries; liver mass; hepatitis c. (Tr. 102-103, 117-118, 134-135, 158-159). As of the alleged onset date, Pecora was 51 years old, and he had a high school education. (Tr. 102, 117, 134, 158, 276). Pecora previously worked as a ceramic tile

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

installer, construction supervisor, and industrial truck operator. (Tr. 44-47, 65-71, 276).

On behalf of the administration, a state agency[5] reviewed and denied Pecora's applications initially on December 11, 2018, and upon reconsideration on April 19, 2019. (Tr. 102-133, 134-183). At Pecora's request, Administrative Law Judge (ALJ) Eric Anschuetz held a hearing on May 7, 2020. (Tr. 38-76, 210). On May 28, 2020, the ALJ issued an unfavorable decision finding Pecora not disabled. (Tr. 12-29). Pecora's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Pecora then brought the matter to this court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

## C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the

claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Pecora had not engaged in substantial gainful activity since October 1, 2017,[6] the alleged onset date. (Tr. 17). At step two, the ALJ characterized Pecora's severe impairments as: peptic ulcer; degenerative disc disease; chronic liver disease; and abdominal pain. (Tr. 17). At step three, the ALJ determined Pecora did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 19).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours of an 8-hour day; sit 6 hours of an 8-hour day; never climb ladders or scaffolds; occasionally climb ramps and stairs; frequently balance and stoop; occasionally kneel, crouch, and crawl; and, due to the effects of pain, is limited to simple tasks.

---

[6] Pecora worked after the alleged onset date, but this work activity did not rise to the level of substantial gainful activity. Pecora earned $8,804 in the third quarter of 2017; $180 in the fourth quarter of 2017; and $160 in the fourth quarter of 2018. (Tr. 17).

(Tr. 20). Consequently, the ALJ found Pecora unable to perform any past relevant work. (Tr. 27). At step five, the ALJ found Pecora could perform other work that exists in significant numbers in the national economy. (Tr. 28). In support, a vocational expert testified that an individual with Pecora's age, education, work experience, and RFC can perform the following representative occupations:

- *Cashier,* DOT #211.462-010, light; SVP 2, with 574,000 positions in the national economy;

- *Fast Food Worker,* DOT #311.472-010, light, SVP 2, with 1.3 million positions in the national economy; and

- *Sales Attendant,* DOT #299.677-010, light, SVP 2, with 292,000 positions in the national economy.

(Tr. 28).[7]

Thus, for the purposes of the Act, the ALJ concluded Pecora was not disabled from October 1, 2017, the alleged onset date, through May 28, 2020, the date of the decision. (Tr. 28-29).

---

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II. Analysis

Pecora's appeal presents the following issues for review:

1) whether the ALJ properly considered the frequency of Pecora's hospital visits when formulating the RFC; and

2) whether the ALJ properly considered Pecora's subjective complaints of pain.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*,

826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.     Substantial evidence supports the restriction to light work with additional limitations, despite absenteeism.**

Pecora claims he cannot maintain full-time competitive employment due to the frequency of his hospitalizations and treatment visits. He argues the ALJ failed to properly account for his excessive absenteeism when formulating the RFC. In support, Pecora cites 126 visits to the hospital between the alleged onset date and date of decision (roughly four times a month over a 30-month period). (Doc. 24 at 21-22).

But Pecora's absenteeism is not a "functional limitation caused by [his] impairments that would affect [his] physical or mental capabilities." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p). And, in any event, the ALJ considered Pecora's frequent treatment. During the ALJ hearing, a vocational expert testified that "[a]bout one day per month" is the acceptable absenteeism rate. (Tr. 74). And the ALJ spent several pages of his decision detailing Pecora's "numerous hospitalizations." (Tr. 20-25). The ALJ

8

detailed many of Pecora's hospital visits, including those in which medical providers determined "there was no need to hospitalize" Pecora and those Pecora appeared in "no acute distress," "exhibited normal gait," and "did not require help" changing or getting on and off the examination table. (Tr. 22).

In short, the ALJ acknowledged Pecora frequently sought treatment, but also observed that "the records indicate that [Pecora's] symptoms were stabilized with pain medication and he denied side effects from medications." (Tr. 25). The ALJ did not find that every single hospital visit could have been avoided by simply taking pain medication, but "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 775 (11th Cir. 2019).

Moreover, Pecora assumes his treatment would require him to miss "at least 4 days of work per month" as "[Pecora] would literally be absent from work during the treatment. . . ." (Doc. 24 at 22). But nothing in the record indicates that Pecora either is, or would be, required to seek future treatment during working hours. *See Cherkaoui*, 678 F. App'x at 904.

### C. The ALJ properly evaluated Pecora's subjective complaints in light of objective medical evidence and other evidence.

When considering a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). First, the

9

claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms. Second, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3-4.

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit his ability to do work-related activities. This other evidence includes a claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3), 416.929(c), 416.945(a)(3); SSR 16-3p, 2017 WL 5180304 at *7-8. The regulations provide that, generally, a claimant's statements about his symptoms, alone, will not establish disability; there must also be objective medical evidence. *See* 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b).

On this score, the ALJ found that Pecora's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however,

10

the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not bolstered by his treatment history or medical findings. . . ." (Tr. 20). Taking issue with this finding, Pecora points to several factors that purportedly show the ALJ erred in his RFC calculation.

First, Pecora points to his self-reported physical limitations and his activities of daily living. (Doc. 24 at 38-39, 42-43). Pecora reported he can lift five to eight pounds; can walk for two blocks; and cannot sit down for an extensive period of time. (Tr. 56, 60). He also reported he cannot lift and bend to carry groceries and that he cannot pull, tug, bend, or stoop when performing yard work. (Tr. 302). But the ALJ found Pecora can lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours of an eight-hour day; sit for six hours of an eight-hour day; occasionally climb ramps and stairs; frequently balance and stoop; and occasionally kneel, crouch, and crawl. (Tr. 20). On the other hand, the ALJ also found Pecora can never climb ladders or scaffolds and is limited to simple tasks due to the effects of pain. (Tr. 20).

The ALJ arrived at this finding after an extensive review of Pecora's treatment history. (Tr. 20-25). The ALJ noted many examinations in which Pecora was "in no distress" and findings were "unremarkable." (Tr. 20). Pecora often "exhibited a normal gait" and his "strength of the upper and lower extremities was rated as 5/5." (Tr. 22). At other times, providers found Pecora's musculoskeletal system was "within normal limits" and that Pecora "exhibited normal range of

11

motion." (Tr. 23). The ALJ also found persuasive findings by state agency physicians that Pecora could perform light work and found unpersuasive findings that Pecora is limited to medium exertional level work. (Tr. 26). The medical evidence as a whole, the ALJ reasoned, supports a finding that Pecora is more limited. (*Id.*). Accordingly, the ALJ found that Pecora's allegation of complete and total disability "cannot be fully accepted." (Tr. 25). But the ALJ did reduce Pecora's RFC to account for "his impairments, subjective complaints, and supported limitations." (Tr. 27).

Next, Pecora points to the objective medical evidence and his treatment. (Doc. 24 at 39-42). But, as described above, the ALJ considered Pecora's hospital visits, including those in which medical providers determined "there was no need to hospitalize" Pecora and those Pecora appeared in "no acute distress," "exhibited normal gait," and "did not require help" changing or getting on and off the examination table. (Tr. 22). The ALJ acknowledged Pecora frequently sought treatment, but also found "the records indicate that [Pecora's] symptoms were stabilized with pain medication and he denied side effects from medications." (Tr. 25).

Finally, Pecora points to his "consistent, steady work history." (Doc. 24 at 43). But the ALJ was not required to explicitly discuss this work history. Although the regulations require an ALJ to consider all of the evidence, including prior work history, in formulating the RFC, nothing requires an ALJ to explicitly discuss that

12

work history as part of a subjective-symptom evaluation. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-8p, 1996 WL 374184; SSR 96-7p, 1996 WL 374186; *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, *10 (M.D. Fla. Aug. 7, 2017) ("Although the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record."); *see also Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, *8 n.5 (M.D. Fla. Mar. 30, 2021) (No binding precedent requires an ALJ to "explicitly discuss a plaintiff's work history" when assessing a claimant's subjective complaints.). Besides, the ALJ here extensively referred to Pecora's work history during the hearing and referenced his past work when questioning the vocational expert. (Tr. 65-75). In short, the ALJ was not required to explicitly discuss Pecora's work history in his decision, and the record shows the ALJ considered that work history.

Supported by substantial evidence, the ALJ properly evaluated Pecora's subjective complaints and accepted them to the extent they were consistent with the objective medical evidence and other evidence of record. The ALJ expressly reduced Pecora's RFC to account for "his impairments, subjective complaints, and supported limitations." (Tr. 27). The court declines Pecora's invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 822 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions

misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on September 26, 2022.

*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE